Good morning. May it please the Court, my name is Joseph Webster of the firm of Hopstrass Dan Walker on behalf of the appellant Coeur D'Alene Tribe of Idaho. In the court with me today are the tribe's in-house counsel Eric Van Horden and my co-counsel Michael Willis. I would like to reserve two minutes for my rebuttal. This case arises as a dispute under the Indian Gaming Regulatory Act, a federal statute the Congress enacted to provide a statutory basis for the operation of gaming as a means of promoting tribal economic development, self-sufficiency, and strong tribal government. The circuit is frequently noted that in enacting IGRA, Congress sought to balance the federal, state, and tribal interest with respect to the regulation of gaming on Indian lands. Can a tribe engage in a form of gaming that is prohibited under state law without the approval of that state in an agreement to allow gaming of any kind? Your Honor, the question really turns on... Your Honor, the tribe cannot engage in a form of gaming that's completely prohibited. Where the question becomes more difficult is in some cases the state generally prohibits the form of gaming but has an exception. For example, a state may prohibit all forms of casino gaming but have an exception for limited casino nights, charitable casino nights. And the courts have said that even though the state generally prohibits casino gaming, that exception for casino nights is sufficient for the game to be available to the tribe, you know, to conduct at a tribal gaming facility. Isn't poker absolutely prohibited by the law of the state of Idaho? Your Honor, it is not. Okay, tell me why not. Under Idaho law, there is a general prohibition against gaming, or against gambling. However, that term is not defined in the Idaho Constitution. But, okay, but does the Constitution prohibit poker? Actually, Your Honor, the way that the language in the Constitution is structured, it generally prohibits gambling and then sets out three exceptions. And it says that with respect to those exceptions, that none of those shall make use of any of the following, including there's a list of a variety of house bank games and poker is listed among those games. Okay, so it prohibits poker. You're just trying to say that Texas Hold'em isn't poker. Well... Is that what you're trying to say? Your Honor, it... That poker only means seven card stud or five card draw for some reason? Sure. Your Honor, in this case, the state legislature defined gambling in a way that it excluded from the definition any bona fide contest of skill. And so if it's a bona fide contest of skill, you don't even have to get to the other exceptions. And with respect to poker, there's some question of what was intended and with respect to that list, because the list includes a variety of games, all of which... It's pretty clear that it prohibits poker. So it seems that... I mean, I'm having trouble if you're saying it doesn't prohibit poker. Well, I can follow you beyond if you're saying that Texas Hold'em maybe isn't poker and it's this game of skill, but I'm struggling. It looks like it pretty clearly prohibits poker. Well, Your Honor, poker is listed, but I guess to sort of clarify... I should just not look at it? I just should not see it? It doesn't really say poker? Well, Your Honor, while there's a general prohibition, Texas Hold'em is a unique form of... Poker? Your Honor, it is a variant of poker, but for example, the statute also prohibits betting on sporting events. Yet there is an exception, again, for bona fide contest of skill. And so the Attorney General has said, not withstanding that prohibition on betting on sporting events, that you can still have a tournament where a person pays money to enter the tournament and then is awarded a prize depending on the outcome. The game that the tribe is offering or offered was conducted in exactly the same format. There was an entry fee to enter. There were non-cash value chips. The tribe then awarded prizes based upon the highest score. So it's a question of how the game is conducted. There's significant uncertainty, I guess, within the state as well. We've cited in our briefs, you know, the back and forth in this State v. Casper case where the latest result was this is a prosecution against two individuals for playing Texas Hold'em. And the magistrate in that court, you know, found that the statute, the prohibitions could not be constitutionally applied, that they were void for vagueness as applied to those individuals. You know, as part of that case, the prosecutor at one point suggested there was a family and friends exception under Idaho law. You know, there was, you know, significant testimony as to members of the law enforcement community engaging in Texas Hold'em. So it's not as though the tribe is the only one in the state that believes that the Texas Hold'em is not completely prohibited. The game is widely and openly played throughout the state, including by members of the law enforcement community. The exhibits submitted by the tribe showed a number of examples of where you had, you know, law enforcement organizations that were, you know, conducting Texas Hold'em. So it's... What's your best authority for saying that the lack of enforcement by a state gives a tribe in your client's situation the opportunity, the right, the authority to conduct any form of poker? Well, in this case, the decision in Artichoke Joe's, I believe, is the... probably the best case where the... this court has said that the... you can reach a point where the lack of enforcement, you know, may be enough to evidence that the public policy is to permit a certain form of gaming. But again, our argument is not just a lack of enforcement. You know, frankly, we think lack of enforcement is probably enough, but it's the fact that because of the structure of the prohibition is not complete, that there is a significant exception. Actually, the one exception is for, you know, these bona fide contest of skill. The tribe has submitted significant evidence as to why this would qualify. And again, if it's a bona fide contest of skill, it doesn't fall within the definition of gambling. So it's not subject to the prohibition. There's another exception, which is for merchant promotional contest. And the Attorney General, with respect to that section, has said that Texas Hold'em can be conducted in that form. So there's more than one example of... even though there may be this general prohibition, there are recognized exceptions, you know, where you can have Texas Hold'em played. I have a question on the... this is a preliminary injunction... on the irreparable harm. Does ICRA create a presumption of irreparable harm given unlawful Class III gaming? I know you're saying you're not in that category, but I just want you to respond. Just hypothetically move forward from that. And does it... does it create a presumption of irreparable harm given unlawful Class III gaming? If not, why? Well, no, Your Honor. There's no indication in ICRA that Congress intended for there to be any presumption of irreparable harm. You know, to the side involving, you know, electronic gaming devices, where the... even though there was an alleged violation of federal law, you know, the court looked at the... the overriding policy interest in the ICRA. And so... On this record, what was the showing of harm made by the appellee? In this case, the state made no showing of harm. And the District Court, you know, came up with, you know, sua sponte, you know, suggestions of what the harm might be that, you know, the... you know, the state couldn't get monetary damages, and that the state would not be able to get, you know, relief. Yeah, our view is that that was clear error because the... the state wasn't seeking monetary damages, and there was no... no basis for monetary damages. And in terms of, you know, obtaining relief, the compact... If the state did prevail on the merits here, would the District Court have jurisdiction to award monetary damages to compensate the state for any economic injuries incurred in the course of this litigation? No, Your Honor. Why is that? There's simply no basis in the statute or in the compact that was negotiated between the tribe and the state to provide, you know, any sort of monetary damages. In addition, the tribe... Does ICRA limit the District Court to provide an injunctive relief against the tribe? Is that all that can happen? That's right. The jurisdictional provision that's relied on here is, you know, for a state to file an action to cost regaming that's conducted in violation of a compact. So, you know, there's no basis for monetary relief. Thank you. Sure. You know, in addition to the... the provisions that we've talked about with, you know, respect to the overall scope of gaming in the state, the... the other really critical factor here is that the compact negotiations, they agreed that binding arbitration would be the exclusive remedy to resolve, you know, all compact disputes. But the state gave you time. I mean, but the District Court gave time for both sides to do that, right? And no one did it. But, Your Honor, the... nothing in the compact says that the tribe has to invoke arbitration or... or else it loses the right that it negotiated. The... the tribe, as it explained in this brief, the goal of the... the tribe here has not been to... to arbitrate the dispute. It's been to say that if the state believes that there's a compact violation, that the state has to follow the remedy that it agreed to in the compact. Wasn't there a time period within which the arbitration could be commenced or could be requested? Wasn't there a time period set forth in the compact? No, Your Honor. The... 60 days somehow jumps into my mind. Right. The... the 60-day period was neither party could invoke arbitration until after the 60-day period had expired. There's nothing in the compact to suggest that there's any time limit for invoking arbitration afterwards. And in fact, that's one of the real problems with the... the way that the... the court interpreted the compact is that... Well, it seems like you're sort of saying, okay, we can sit on our hand... you're... you're saying on the one hand, this has to be arbitrated. But we're not going to do anything about it, so we're just going to sit on our hands so no one can touch you. Well, no, Your Honor. The... the state could and still could invoke arbitration. But didn't... didn't both of you notify the court that neither of you sought arbitration? The... the notice was that neither side had invoked the arbitration provision. So what was the court supposed to make of that? If he said neither side has requested arbitration, what was the court supposed to take from that? Well, Your... Your Honor, in the original decision, what the court said is that it would, you know, leave for another day to decide the question of what happens after the 60 days. And the... the court actually then set out what it understood the tribe's position to be and what it understood the state's position to be. But to me, it says... it says neither plaintiff nor defendant has requested arbitration and therefore believe that disposition of the pending motion to dismiss is appropriate. To me, that's saying the court can proceed because we're not invoking the arbitration... arbitration provision. Your Honor, for the court to proceed further, isn't that kind of negating the possibility of arbitration? Well, no, Your Honor, because in this case, the motion to dismiss was based upon the arbitration clause. The... the... the argument that the tribe has set forth from the very beginning was that, you know, jurisdiction and venue were not proper in the district court because the parties had agreed that the... the only remedy would be binding arbitration. That's inconsistent, though, to say that we're not requesting arbitration, but we want you to... so we want the court to proceed and then to say arbitration is still on the table. That doesn't make sense to me. Well, Your Honor, the... the tribe at the... at the briefing and at the argument made the case that it believed that binding arbitration was what the parties had agreed to. And why would you say then that you're not requesting arbitration? Why wouldn't you alert the court, we want arbitration, so we ask that the corporate normally what happens is if a party wants to proceed in arbitration, they ask the court to stay any proceedings in court while the parties seek arbitration. Well, again, the... based on the tribe's position is that the... the state was the party that was alleging harm, that was alleging that there was a violation. The... the... the state would have been the... the... the party to invoke arbitration. Why would you say neither party is requesting arbitration? Why wouldn't the stipulation say the state has not sought arbitration? Well, because the... the state hadn't invoked the arbitration remedy. Again, the tribe's position is that... I mean, the tribe did not invoke the arbitration remedy. Again, the tribe's position is not that arbitration... that it would arbitrate. It was that if the state wants to have this dispute resolved, that it has to... That's not what the stipulation said. It said the parties have not requested arbitration. It didn't put the onus on the state to Your Honor, I think with the joint... it's a joint status report, you know, it... it factually stated that neither party had requested arbitration, but that didn't mean that the tribe had some way waived, you know, the... the provision of the compact that says this is how disputes will be resolved. And that... Once your... I think... take it was your motion to dismiss. That's correct, Your Honor. Your client's motion to dismiss, which the district court denied. When the district court denied that motion, did you then assert the need for arbitration? Request arbitration? Well, after it was denied, the... at the same time was when the... the court had granted the... the state's motion for a plenary injunction. Did you have yes or no in your vocabulary? It did not, Your Honor. You have a little bit of time, I think. Okay. So, again, you know, to... you know, to the tribe, this goes back to the... the threshold question that the... the own... it was improper to put the onus on the tribe to invoke arbitration. That there's case law that says that if the... if the contract provides for arbitration, it's... you can't require one party to invoke it, otherwise they lose it. I think that your argument would be stronger if you had made that argument to the district court at the time when you were doing the status report. Perhaps, Your Honor, but I will say is, you know, from the very beginning, the tribe has been consistent that it believes that this is the remedy that this... and even before the state filed the lawsuit, the tribe has said from the very beginning that the remedy to resolve this is the Article 21 process. Either party could have invoked it, though, under the... under the contract. Either party could have. That's right. All right. Thank you, Counsel. You've exceeded your time. We'll give you one minute for rebuttal. Thank you, Your Honor. We're from the state. All right. Good morning, Your Honors. Good morning. My name is Clay Smith. I'm the Deputy Attorney General for the state of Idaho. At counsel table is Tim Davis, who is also a Deputy Attorney General and co-counsel. My friend has raised two basic arguments, and they are the basic arguments in the case. The first is whether Article 21 of the Compact forecloses this action, even though neither party has requested arbitration. What I refer to is the arbitral exclusivity issue. The second, and the second argument, of course, was the one that predominated in an argument earlier, and that is, does Idaho law prohibit all Texas Holden variant? And in that regard, I would point out that there has never been any dispute on the district court level that Texas Holden is POCR. POCR has a number of different variants, and it's one of those variants. But I guess the circuit court hasn't... I think Judge Windmill here published on this. Did he publish on this? I think it's published. The decision granting the preliminary injunction and denying the motion to dismiss is published in FedSub 3rd. So opposing counsel's position is that the way the tribe intends to offer Texas Holden, it would be a game, a contest of skill, as opposed to chance. What's your response to that? Your Honor, the opening paragraph of Title 18, Section 3801, as well as the corresponding provision in the Idaho Constitution, Article 3, Section 20, states that there are three forms of gaming that are permissible in Idaho. The state lottery, parimutuel betting, bingo, and raffles. And it goes on to state that in the playing of those three forms of permitted gaming, no person may use or may conduct them through what it refers to as casino gaming. And it gives a definition of casino gaming, which include, among others, poker. So what was established in the Coeur d'Alene 1 litigation, the 1993 district court litigation, in this court's 1994 decision, was that, as Senior Judge Ryan held in Coeur d'Alene 1, that there are three forms of gaming that are permissible in Idaho. And those types of the use of poker, baccarat, keno, or electronic or electromechanical simulations. So the Constitution doesn't say Texas Hold'em, though, right? It does not, Your Honor. So for your argument, we have to say that the Constitution prohibits poker, and then we have to say that Texas Hold'em is poker. Actually, Your Honor, no. Okay. What this court has to simply do is follow Senior Judge Ryan's decision in Coeur d'Alene 1, which holds that there are three forms of permitted gaming in Idaho. The lottery, parimutuel betting, and bingos and raffles. So there is really no question in our slot machines? It does not. Again, I come back, I don't mean to sound like a broken record, but it's important to keep in mind that there are only three kinds of gaming permitted in Idaho. Their compact is the same as, it has to comply with state law, right? Correct. And that's what the compact, the two are the same, essentially. That's correct. Obviously, the compact must comply with IGRA. But there are exceptions. I'm sorry, Your Honor? Aren't there exceptions to the prohibition on gambling? You mean under Idaho law? Under Idaho law. So there is no contest of skill exemption? Well, that's not an exemption. What it is, is a clarification that contests of skill, speed, endurance, are not gambling. In other words, In other words, exemption. Excuse me? In other words, an exemption from the prohibition on gambling. No, it's a clarification in the sense that in those kinds of activities, there's a gaming involved, which is the payment of, which is the element of chance for the contestants. Well, but I don't even know how to play Texas Hold'em, so anyone could play it better than I could and win more. So why isn't there some skill involved? Well, there may be skill involved. That's not the issue. The issue is whether or not there is chance involved. And there is chance involved. And the other issue is that Idaho law is quite clear about the kinds of gaming that are permitted, and poker is plainly not one of the three. Doesn't this particular compact envision that there might be disputes as tribes like Cordova Lane started to engage in forms of gaming, that there would be disputes and that they might need to be resolved in the courts? That's correct. And the dispute resolution process, obviously, is in Article 21 of the compact. In other words, in negotiating to get the compact the agreement, the tribe and the state had different views of what was permissible gaming. That's correct. And the compact sort of embraces that. Well, what the compact did, Your Honor, it did embrace it, but it embraced it in some unusual sense. At the beginning of the parties, or actually during the parties' negotiations in 1992, there was a dispute over what forms of class three gaming were permissible in Idaho. And if the court were to go back in time through some time machine, at that point there was some dispute among at least one district court and arguably the Second Circuit and other circuits as to whether or not class three gaming was permissible if the state had a policy, a lax policy towards gaming. In other words, if you permitted one form of gaming, then you permitted all forms of gaming. And Idaho's position at that time was that, no, there are three forms of gaming permitted under Idaho law. The tribe's position was, no, those forms of gaming show a policy that is favorable to gaming. And so what the parties did, rather than go through the bad faith negotiation process or litigation that is possible under IGRA, they brought a, they stipulated to a declaratory judgment action in district court. And that is in Article VI of the compact. That declaratory judgment action produced the decisions in Court of Lange 1 and Court of Lange 2 and resolved that issue. Resolved what issue? Resolved the issue of what forms of gaming were permitted in Idaho for purposes of inclusion in the compact. So, if we were so inclined, the panel could affirm on the basis of race judicata? That's correct. And we argued that before the district court and we've argued it before this court. Were the same parties involved in that case? How can we apply race judicata if it were not the same parties? They were the same parties. The name of the case, of course, was Court of Lange Tribe versus Idaho. Were the same issues? Yes, in the sense, and I'll have to qualify my answer. The issue before the court, before Judge Ryan, was whether or not, what forms of Class III gaming were permissible in Idaho. In the course of deciding that issue, the court decided what forms of gaming were permissible in Idaho at all. I'm not sure this particular issue, the nuanced issue that we have here, was encompassed within that decision, whether or not Texas Hold'em is a variant of poker that is included within. I'm sorry, I didn't mean to interrupt. Let me read from Judge Ryan's decision. It's specifically page 1273 of, I believe it's 842 Fed Sup. He says, quote, although the tribes have not listed the specific games they wish to conduct, they have made it clear that they intend to conduct card and dice games, baccarat, roulette, keno, and slot machines, and all other traditional forms of casino gambling or the electronic or electromechanical equivalent thereof. So there's no question that Judge Ryan addressed the propriety of poker in Idaho. And this the requirement for both Class II and Class III gaming under IGRA is precisely the same. In both 25 U.S.C. Section 2710B1A, or actually B1B, and 25 U.S.C. Section 2710D1B. Since you're running out of time, I want to ask you about the preliminary injunction and the irreparable harm prong. It seems to me that the showing of irreparable harm was fairly light in this situation, that I don't see anything in the record that talks about suffering irreparable social harms or whatever, that you only allege that you suffer monetary harm. And that's usually not enough. So can you address that? I can, Your Honor. We've never claimed monetary harm, but we have claimed substantial harm otherwise. And it comes in two forms. First, there is no adequate remedial law against the tribe. We've never suggested that the tribe is liable in damages. What was your showing of irreparable harm in the district court? The showing of irreparable harm are, one, the absence of any legal remedy, i.e. damages, and two, violation of federal law and the compact. And those are really quite substantial interests that cannot simply be waived away by the tribe as inconsequential, and they have done that. I'd also note that this is an unusual case with respect to irreparable harm because IGRA itself, in 27D7Aii, provides for actions to remedy through injunctions against gaming conducted in violation of a compact, and that's precisely what we have. There's a substantial question as to whether irreparable harm has to be shown other than the violation. So are you taking the position that there's a presumption of irreparable harm? We believe there is. Not only is there a presumption of irreparable harm, there is a... What's your best support for that? Our best support for that is the Odessa Warehouse case. Does that specifically say that, though? Well, it says where Congress provides for an injunctive relief against violation of federal law, there is no further showing of irreparable harm that's required. Now, let me be candid in the sense that the Supreme Court in 2006 issued the eBay decision, and then four years later issued Gears and Seeds, and both of those cases have raised the issue of whether or not the mere provision of discretion in a district court to award injunctive relief is sufficient to obviate the need to go through the traditional four-prong analysis. But neither Gears and Seeds, which was an APA case, nor eBay, which was a copyright act, involved a statute like 2710D7AAI, which expressly provides for injunctive relief. Now, my time is expiring if... I wanted to ask you about the issue that was in the former litigation. Was the particular issue whether or not a compact must be negotiated to engage in Class III gaming that's not specifically delineated? That was the particular issue, wasn't it? Yes. Insofar as, Judge Rawlinson, you mean specifically delineated, specifically authorized under Idaho law. And what's your response to opposing counsel's position that it was the state's obligation to request arbitration if there were to be arbitration? Plainly, that's incorrect. The Article 21.3 states that either party may request arbitration after the informal dispute resolution process is proved unproductive. Unless there are further questions. Thank you, counsel. Thank you. We'll give the appellant a minute for rebuttal. Counsel, would you address the race judicata issue? Yes, Your Honor. In the previous Court of Lane case, the only class of games that was at issue was Class III. In fact, the court specifically says that the case only involves Class III gaming. The court had no reason or cause to analyze what sort of Class II games might be available. In fact, this specific issue was never argued, and there would have been no reason to. In terms of what can be included in a compact, you can only include Class III games in a compact. Interior will affirmatively disapprove a compact if you try to include Class II gaming issues. Do you agree the parties were the same but the issues were different? That's correct, Your Honor. And so this specific issue is one that, frankly, has never been addressed. And also I think it's important that the tribe is not purporting to offer this game under the compact. The tribe is offering this game as a Class II game under the IGRA, which is a completely separate authority, which says that the tribe can offer these games as Class II with oversight by the federal authorities, the National Indian Gaming Commission. And the test is a very lenient test in terms of whether a particular card game is permitted to any person, organization, or entity for any purpose. So in looking at that, we look at the statute, 18-3801, which talks about gambling defined, which has this list, refers to casino gaming, gambling including and listing poker, but then specifically saying, but does not include bona fide contest of skill, speed, strength, or endurance in which awards are made only to the entrance or the owners of the entrance. And that's exactly the way that the tribe structured its Texas Hold'em tournaments. You know, we also cited the Attorney General opinion on this, where the Attorney General says, this provision permits contestants to pay a fee to enter a contest such as a golf tournament and gain a prize or award depending on the contestant's performance. So you disagree with opposing counsel that there are exemptions to the prohibition on poker? Well, we think that all forms of poker are excluded, and Texas Hold'em is a form of poker. And so there are no exemptions to that. And what's your response? The tribe absolutely disagrees based on the plain language of the statute. The statute provides this list, but then says does not include. And so the question is, if you come within one of the exceptions for what's not included, then the prohibition doesn't apply. So the tribe thinks that the way that the statute has been structured in Idaho, also the fact that before that list it says the operation of casino gambling including, but not limited to. And so, again, we think the question is more complicated than what the state has asserted. All right, thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Hawkins, Rawlinson, Callahan